**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION**

**WESLEY TIMOTHY FULLARD,**

**Plaintiff,**

**vs.** **Case No. 4:16cv507-MW/CAS**

**MARIA THOMAS, R.N.,**
**CARRIE RHODES, L.P.N.,**
**DR. MARY PLISKIN,**
**and DR. VIRGINIA MESA,**

**Defendants.**[1]
__________________________________/

## SECOND REPORT AND RECOMMENDATION[2]

Pending in this case are several motions to dismiss. First, Defendants Pliskin, Rhodes, and Thomas, filed a motion to dismiss, ECF No. 43, and the pro se Plaintiff has filed a response in opposition, ECF No. 46. Defendant Mesa also filed motion to dismiss, ECF No. 49, and Plaintiff filed a response to that motion as well. ECF No. 51. Defendants then filed

[1] The spelling of the Defendants names has been corrected to reflect their spelling as presented within the motions to dismiss, ECF Nos. 43 and 49.

[2] The first Report and Recommendation entered in this case, ECF No. 33, which was adopted, ECF No. 40, recommended dismissing Corizon Health Services, Inc. The case has proceeded against the remaining four Defendants. *See* ECF No. 41.

a motion requesting leave to file a reply memorandum to Plaintiff's responses. ECF No. 53. That motion was granted, ECF No. 55, and Defendants' reply, ECF No. 57, has been considered. Although Plaintiff did not request leave to file a sur-reply, he did so on July 3, 2017, ECF No. 58, and that document has been considered as well.

**Allegations of the amended complaint, ECF No. 12**

Plaintiff's amended complaint [hereinafter after "complaint"] asserts an Eighth Amendment claim for the denial of medical care. Plaintiff alleged that on August 8, 2014, while housed at Jefferson Correctional Institution, he experienced chest pain and shortness of breath. *Id.* at 5. Because Plaintiff previously had four prior heart attacks, he had a "'nitro' pill" in his cell and took that medication. *Id.* Plaintiff informed a dormitory officer of his medical condition and he was sent to the medical department. *Id.* at 7. Plaintiff alleged that Defendants Thomas and Rhodes were unable to "get the E.K.G. machine to work" and in their agitation, told Plaintiff "he was probably just having gas pain and started treating the plaintiff with Mallox." *Id.* Plaintiff's assurance that he was, indeed, having a heart attack "fell on deaf ears." *Id.* After approximately seven hours with no relief from the Mallox, the E.K.G. machine "finally starts working around 1:30 a.m." *Id.* at

7-8. Plaintiff alleges that he was told to go lay down, but he asserts that he is made to wait too long for the ambulance. *Id.* at 8. He does not arrive at the hospital until around 3:30 a.m., and within fifteen minutes it is confirmed that he is "having a heart attack." ECF No. 12 at 8. Plaintiff received medical care at the hospital and spent two days in the I.C.U. and another two days in another room before being released. *Id.* at 9. Plaintiff was then released and returned to Jefferson Correctional Institution where he spent two weeks in the infirmary. *Id.* He contends that he "received no additional medications," but was told by Defendant Pliskin that he would be sent to the "Lake Butler Medical Center"[3] to see a cardiologist. *Id.*

After an examination by the cardiologist, Plaintiff was returned to Jefferson C.I. *Id.* at 10. He contends that he was not provided any new "medication for this new heart problem, just the same medicines [he] was already receiving." *Id.* Since his return, Plaintiff alleges that his condition has worsened and he now has the "classic signs of congested [sic] heart failure." *Id.*

[3] The Regional Medical Center is located in Lake Butler and is a "hospital owned by the Florida Department of Corrections." ECF No. 43 at 3, n.4.

Plaintiff alleges that Defendant Mesa did not act in a timely manner, nor did she "follow proper procedure for a heart attack." ECF No. 12 at 10. He contends Defendant Pliskin failed to properly train Defendants Rhodes and Thomas and asserts that because they did not follow proper protocol, he has suffered permanent damage to his heart. *Id.*; *see also* p. 6. As relief, Plaintiff seeks a declaratory judgment, injunctive relief, compensatory and punitive damages, as well as costs. *Id.* at 11.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting

Twombly, 550 U.S. at 570, 127 S.Ct. 1955).[4] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 at 556); *see also* Speaker v. U.S. Dep't of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 at 556). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Pro

[4] A complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)).

se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a “largely groundless claim” does not proceed through discovery and “take up the time of a number of other people . . . .” Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (quoted in Twombly, 127 S.Ct. at 1966). The requirements of Rule 8 do “not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.” Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1949. A complaint does not need detailed factual allegations to survive a motion to dismiss, but Rule 8 “demands more than an unadorned, the-defendant-unlawfully- harmed-me accusation.” 556 U.S. at 678, 129 S.Ct. at 1949. “A pleading that offers ‘labels and conclusions’ or ‘a formulaic recitation of the elements of a cause of action will not do.’” *Id.* (quoting Twombly, 550 U.S., at 555, 127 S.Ct. 1955).

Courts should take a “two-pronged approach” when considering a motion to dismiss under Rule 12(b)(6). Iqbal, 556 U.S. at 679, 129 S.Ct. at

1950. The first consideration is whether the complaint presents "well-pleaded factual allegations" which are entitled to a presumption of truth or, whether, the complaint merely asserts "legal conclusions" which "are not entitled to the assumption of truth." *Id.* at 679, 129 S.Ct. at 1950. If the complaint contains factual allegations that are well pled, the second step is to consider whether the non-conclusory factual allegations "plausibly give rise to an entitlement to relief." *Id.* If so, a motion to dismiss should be denied. *Id.*, at 680, 129 S.Ct. at 1950-51 (citations omitted).

**ANALYSIS**

**A. First Motion to Dismiss, ECF No. 43**

Defendants Thomas, Pliskin, and Rhodes argue that Plaintiff's complaint is insufficient to state an actionable constitutional claim. ECF No. 43 at 10. They assert that Plaintiff was given nitroglycerine and was observed, but the EKG was malfunctioning. *Id.* at 9. After it properly functioned, Plaintiff was "sent to the hospital, where he had cardiac catheterization surgery to route vessels around vascular blockages." *Id.* at 9-10. Thus, Defendants contend that Plaintiff was provided medical care and his allegations that the "nurses mistook his symptoms for gas pains . . . amounts to no more than negligence." *Id.* at 10.

Plaintiff argues that he has presented sufficient facts to state an Eighth Amendment claim against the Defendants.[5] ECF No. 46 at 3-4. Plaintiff points out that Defendants ignored his complaints of pain which were documented in his medical records. *Id.* He additionally contends that Defendants also showed deliberate indifference by refusing to review his medical records. *Id.* at 4. Plaintiff argues that Defendants unreasonably delayed taking him to the hospital for treatment because a heart attack is a life threatening condition which requires immediate medical attention. *Id.* at 4 (citing to, *inter alia*, Lewis v. Wallenstein, 769 F.2d 1173, 1183 (7th Cir. 1985) (stating that "an immediate response to a cardiac arrest case is crucial - seconds count."), and p. 11 (arguing that "time is of the essence when someone is experiencing a heart attack."). Plaintiff contends that delaying transportation to the hospital for several hours for an inmate

[5] Plaintiff argues that a motion to dismiss should not be granted unless it appears that Plaintiff could "provide no sets [sic] of facts in support of his claim which would entitle him to relief." ECF No. 46 at 2. However, the language Plaintiff quoted is from Conley v. Gibson which has now been replaced by the standard set forth in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929 (2007) (explaining the "no set of facts" phrase "as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."). Bell Atl. Corp. now requires that a complaint present "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570, 127 S. Ct. at 1974.

suspected of having a heart attack, and after having taken "nitroglycerin was deliberate indifference to his serious medical needs." *Id.* at 11.

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Eighth Amendment guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (quoted in Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)). "[B]asic human necessities include food, clothing, shelter, sanitation, medical care, and personal safety." Harris v. Thigpen, 941 F.2d 1495, 1511 (11th Cir. 1991) (cited in Collins v. Homestead Corr. Inst., 452 F.App'x 848, 850-851 (11th Cir. 2011)).

Deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West,

320 F.3d 1235, 1243 (11th Cir. 2003) (quotations omitted) (quoted in Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011)). "In either of these situations, the medical need must be 'one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" Farrow, 320 F.3d at 1243 (citation omitted); *see also* Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009). Alternatively, "a serious medical need is determined by whether a delay in treating the need worsens the condition" or "if left unattended, poses a substantial risk of serious harm." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (citations omitted). It is evident that Plaintiff had a serious medical need and Defendants do not argue to the contrary. The question here is whether Plaintiff's complaint sufficiently alleges a claim for deliberate indifference.

Deliberate indifference requires more than negligence,[6] but it is unnecessary to show a defendant intended to cause harm. Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994). Deliberate indifference requires a plaintiff to show a defendant was

[6] "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham, 654 F.3d at 1176 (citing Brown v. Johnson, 387 F.3d 1344, 1451 (11th Cir. 2004)).

subjectively reckless and consciously disregarded a substantial risk of serious harm. Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (explained in Farmer, 511 U.S. at 838-40, 114 S. Ct. at 1979-80). The "inadvertent or negligent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Estelle, 429 U.S. at 105-06, 97 S.Ct. 285; Farrow, 320 F.3d at 1243.

In a claim for the denial of medical care, a plaintiff must show: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), cert. denied, 531 U.S. 1077 (2001); Farrow, 320 F.3d at 1243. Put another way, to show a defendant acted with deliberate indifference, "a prisoner must show the prison official's: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence.'" Bingham, 654 F.3d at 1176 (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).

"However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' " McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted) (quoted in Farrow, 320 F.3d at 1243). For example, medical malpractice does not constitute deliberate indifference. Estelle, 429 U.S. at 106, 97 S. Ct. at 292. "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)). "A 'complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'" Estelle, 429 U.S. at 106, 97 S.Ct. at 292 (quoted in Bingham, 654 F.3d at 1176). Rather, an "official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." McElligott, 182 F.3d at 1255 (citations omitted).

Here, Plaintiff's allegations have been accepted as true, and have been liberally construed. He alleged that "the nurses tried for hours to get

the E.K.G. machine to work and failed." ECF No. 12 at 7. He complained that he was "in severe pain and [said] the Mallox [was] not working." *Id.* He said that he told the nurses he was "scared that he 'was] going to die if he [did not] get treatment soon." *Id.* at 8. After finally getting the E.K.G. machine to work around 1:30 a.m., and with Plaintiff complaining that he was "in severe pain," he is told "to go and lay down." *Id.* Plaintiff said he received "no treatment in the infirmary" and received no help. *Id.* Plaintiff alleged that his heart issue began at 7:00 p.m., but he did not arrive at the hospital until "around 3:30 a.m." *Id.* Thus, Plaintiff did not simply provide conclusory allegations; instead he alleged specific facts which are sufficient to state a plausible Eighth Amendment claim. Plaintiff's allegations reveal that his symptoms should have sufficiently indicated to the nurses that his condition was objectively serious. Complaints of chest pain and shortness of breath from a person who previously had four heart attacks is a condition so obvious that any lay person would recognize the need for immediate medical care.

Moreover, it is clear that these Defendants recognized Plaintiff had an objectively serious need because the nurses sought to perform an E.K.G. on Plaintiff. However, while they were aware of that need, Plaintiff

alleged that they did nothing to assist him for approximately seven hours. Working with the E.K.G. machine, but failing to provide any medical treatment to Plaintiff, is sufficient to demonstrate an objectively insufficient response to Plaintiff's needs. Furthermore, the nurses spent hours working on the E.K.G. machine but did not transfer Plaintiff to the hospital for medical care. Plaintiff provided sufficient factual allegations to state a plausible Eighth Amendment claim. Defendants' contention that Plaintiff's claim amounted "to no more than negligence" should be rejected.

Additionally, Defendants argue that Plaintiff "has a serious causation problem." ECF No. 43 at 12. Defendants contend that Plaintiff now believes he has developed congestive heart failure because of the lack of care, but they assert that is only Plaintiff's self-diagnosis. ECF No. 57 at 3-4. Plaintiff alleged that he has many blockages and suffered damage to his heart. ECF No. 12 at 9, 10. He claimed that he developed congestive heart failure because of Defendants' actions. *Id.* at 10. Whether Plaintiff can ultimately prove causation to his current medical condition from the prior treatment is a matter that should be resolved either at summary judgment or at trial, after Plaintiff has been permitted to engage in discovery. Plaintiff sufficiently alleged causation in his complaint. The

motion to dismiss, ECF No. 43, filed by Defendants Thomas and Rhodes should be denied.

Defendant Pliskin argues in her motion to dismiss that Plaintiff's claims against her are insufficient. ECF No. 46. She asserts that she cannot be held liable as a supervisory official for the unconstitutional actions of subordinates based on vicarious liability. *Id.* at 10. Defendant Pliskin contends that Plaintiff did not provide any factual allegations in the complaint which reveal she was involved in the events prior to Plaintiff's transport to the hospital, that she had a duty to train the nurses, or even was their supervisor.[7] *Id.* at 11. Finally, Defendant Pliskin argues that she cannot be liable in this case because Defendants "Thomas and Rhodes cannot be liable" as they did not violate Plaintiff's constitutional rights. *Id.* at 11-12.

There is only one factual allegation against Defendant Pliskin in the complaint: that she "failed to do her job in training" the nurse Defendants. ECF No. 12 at 10. Plaintiff claimed that Defendant Pliskin failed to teach

[7] Defendant Pliskin is a physician. ECF No. 43 at 11. Plaintiff incorrectly identifies her, at times, as another nurse, *see* ECF No. 58 at 4-5 and ECF No. 46 at 3, although he did say at one point, that she "was the head physician in charge at Jefferson C.I." ECF No. 58 at 4.

them policy and procedure in treating a heart attack and in transporting a prisoner. Plaintiff said, without explanation, that "protocol was not followed" which caused him permanent heart damage. *Id.*

Plaintiff's complaint does not provide any facts which reveal that Defendant Pliskin was personally involved in any way in providing medical care to Plaintiff when he suffered his heart attack. Further, a physician is not charged with the training of nurses to recognize the need for medical care. Nurses are trained prior to becoming employed as a nurse and in that capacity, work alongside physicians in providing medical care. Plaintiff's complaint lacks any basis to find that Defendant Pliskin violated Plaintiff's rights. She cannot be held liable for the actions of other staff because the doctrine of respondeat superior or vicarious liability does not provide a basis for recovery in a § action. Marsh v. Butler Cnty., 268 F.3d 1014, 1035 (11th Cir. 2001) (en banc) (cited in Farrow, 320 F.3d at 1249, n.1; *see also* Harvey v. Harvey, 949 F.2d 1127, 1129 (11th Cir. 1992) (citing Monell, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)); *see also* Collins v. City of Harker Heights, 503 U.S. 115, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992). Instead, for Defendant Pliskin to be held liable, she must have been personally involved in providing medical care, she must

have directed nurses to take a course of action, or there must be a causal connection to and identifiable policy which she created and which was followed. None of those situations are present here. Indeed, Plaintiff alleged that "protocol was not followed." The motion to dismiss Defendant Pliskin, ECF No. 43, should be granted.

**B. Second Motion to Dismiss, ECF No. 49**

Defendant Mesa argues that Plaintiff's complaint is insufficient because it "contains no factual allegations regarding [Defendant] Mesa's care." ECF No. 49 at 9. "The only mention of her is the brief and entirely conclusory statement" that she "did not act in a timely manner," and did not "follow proper procedure for a heart attack, knowing [Plaintiff's] previous history," and she "did not call for emergency transport until 7 hours" after Plaintiff reported to medical. *Id.* at 3, 9 (citing to ECF No. 12 at 10, ¶ 17). All of those allegations are conclusory as Plaintiff provided no facts which demonstrate that she was involved in providing medical treatment to Plaintiff on August 8, 2014, or in arranging for his transport to the hospital.[8] There are no facts which state what Defendant Mesa did or did not do that

[8] Plaintiff's response suggests that only the nurses arranged his transport to the hospital. ECF No. 51 at 10.

Plaintiff believes violates his rights. Without such a statement of facts, Plaintiff's amended complaint is insufficient.

Moreover, Plaintiff's response to that motion states that the nurses were deliberately indifferent to his medical needs because they failed "to alert Dr. Virginia Y. Mesa as soon as the E.K.G. malfunctioned." ECF No. 51 at 7. He says that Defendants Thomas and Rhodes "did not alert Dr. Mesa until" 10:00 p.m. *Id.* That statement shows she was not involved in Plaintiff's care and was unaware of the situation until three hours later. Yet those facts were not alleged in the amended complaint. Plaintiff never asserted facts showing Defendant Mesa's involvement, nor did he explain what Defendant Mesa was told. It is unclear from Plaintiff's response whether Defendant Mesa was advised about Plaintiff's condition or about the E.K.G. machine malfunctioning. *Id.* at 9.

In addition, Plaintiff's response reiterates that Plaintiff was seen only by nurses before he was sent to the hospital. ECF No. 51 at 3-4. His complaints of pain, his prior history, and his request for an ambulance were all made to "nurses." *Id.* at 4. Plaintiff's response once again provides a conclusory assertion that "doctors and nurses still delayed [his] transport" to the hospital, but he never identifies Defendant Mesa as being a person

who was present or involved in his care. Plaintiff never states what she did, or did not do. Plaintiff's conclusions, unsupported by specific factual allegations in the amended complaint, are insufficient to state a claim. The motion to dismiss filed by Dr. Mesa, ECF No. 49,

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that the second motion to dismiss, ECF No. 49, filed by Defendant Mesa be **GRANTED**, that the first motion to dismiss, ECF No. 43, be **GRANTED** as to the claim against Defendant Pliskin, but that the motion, ECF No. 43, otherwise be **DENIED** as to Plaintiff's claims against Defendants Rhodes and Thomas. It is further **RECOMMENDED** that Defendants be required to file an answer and this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on January 23, 2018.

S/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**